IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GREGORY F. ROBINSON,           )
                               )
       Plaintiff,              )
                               )
       v.                      ) Civ. No.13-497-SLR
                               )
WARDEN PERRY PHELPS,           )
et al.,                        )
                               )
       Defendants.             )

---

Gregory F. Robinson, James T. Vaughn Correctional Institution, Smyrna, Delaware, Pro Se Plaintiff.

---

## MEMORANDUM OPINION

Dated: May 21, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Gregory F. Robinson ("plaintiff"), is an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, who proceeds pro se and has been granted in forma pauperis status. He filed this complaint pursuant to 42 U.S.C. § 1983 claiming violations of his constitutional rights.[1] (D.I. 3) In addition, plaintiff requests counsel. (D.I. 5)

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend her complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a

two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[2] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Excessive Force/Failure to Protect

Plaintiff raises several claims of excessive force and failure to protect. For an inmate to prevail on an excessive force claim or failure to protect claim, he must prove two things: (1) that he is incarcerated under conditions posing a substantial risk of harm; and (2) that the official knew of and disregarded an excessive risk to the inmate's health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 833-38 (1994); *see also Griffin v. DeRosa*, 153 F. App'x 851 (3d Cir. 2005) (unpublished).

---

[2]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

3

Plaintiff alleges that on May 15, 2011, defendant Sgt. Stanford Henry ("Henry") assaulted him and that defendant Lt. Natasha Hollingsworth ("Hollingsworth") arrived during the assault. Each time plaintiff yelled in pain, Henry and defendant Charles Stoddart ("Stoddart") told him to "shut up." Plaintiff sustained injuries but was denied medical care by Henry, Hollingsworth, Stoddart, and defendants Sgt. Wilfred Beckles ("Beckles"), Sgt. Angelina DeAllie ("DeAllie"), and other prison personnel who are not named as defendants. (D.I. 3, ¶¶ 1, 2)

Plaintiff was "roughly gripped-up, shoved and pushed" on June 3, 2011 by Beckles when he was taken to a medical grievance hearing, making his injuries worse. (D.I. 3, ¶ 5) On July 28, 2011, Beckles shoved and pushed plaintiff while escorting him to and from recreation, knowing that plaintiff had neck and back injuries. (Id. at ¶ 9)

On February 5, 2012, Beckles and defendant C/O Thomas ("Thomas") escorted plaintiff to the shower. On the way there, Beckles shoved and pushed plaintiff in the back, and grabbed and shoved him, causing plaintiff to land on his right side. Plaintiff's legs "went numb" and he could not get up. Beckles dragged plaintiff to the shower and tried to place him in a standing position. Thomas told Beckles "that's enough", and Beckles dropped plaintiff to the floor. Plaintiff was taken by stretcher to the nurse's station and later, he was taken to the infirmary. (D.I. 3, ¶ 15) On February 8, 2012, plaintiff was escorted from the infirmary to his cell. On the way, defendants Lt. Drake ("Drake"), Lt Baines ("Baines"), and C/O Lindale ("Lindale") choked plaintiff until he lost consciousness. (Id. at ¶ 16)

4

Plaintiff will be allowed to proceed on the excessive force, failure to protect, and denial of medical care claims against Henry, Hollingsworth, Stoddart, Beckles, DeAllie, Thomas, Drake, Baines, and Lindale.

### B. Medical Needs/Conditions of Confinement

Plaintiff raises a number of medical needs claims. The claims concern denial and/or delay of medical care, as well as the need for accommodation due to medical conditions. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05. However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (unpublished) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf.

5

*Estelle v. Gamble*, 429 U.S. 97, 107 (1976). In addition, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

**1. Medical care**

Plaintiff was seen by Dr. Derosiers on May 17, 2011 for the injuries resulting from the May 15, 2011 incident with Henry. Dr. Derosiers would not prescribe pain medication. Plaintiff was advised that he would be x-rayed within seven to ten days, but the x-rays were not taken until July 1, 2011.[3] (D.I. 3, ¶ 4, 17) Plaintiff was seen by Dr. Derosiers on October 19, 2011. Plaintiff was taken to Dover, Delaware on October 31, 2011 to undergo an MRI of the neck and back.[4] (*Id.* at ¶¶ 31, 32) Plaintiff will be allowed to proceed against Dr. Derosiers for denial or delay of medical treatment.

Plaintiff was taken to medical on May 24, 2011 and seen by defendant Nurse Mark ("Mark"). Plaintiff had been prescribed Motrin or Tylenol and was charged for the

---

[3]Plaintiff filed a grievance for denial of the x-rays. At the hearing, he was told that he should have been taken to x-ray and it was not known why he had not. (*Id.* at D.I. ¶ 19)

[4]During that time, Stoddart made comments to others that nothing was wrong with plaintiff. (*Id.* at ¶ 12) Plaintiff submitted a grievance on December 13, 2011, complaining that correctional officers signaled to the secretary not to write in medical notes how plaintiff was treated by correctional officers. (D.I. 3, ¶ 37) Neither of these allegations rise to the level of a constitutional violation, and they will be dismissed as frivolous.

medication. Plaintiff wanted his money back and wanted to see a physician. (D.I. 3, ¶ 18) On October 13, 2011, Mark did not dispense medication (apparently prescribed) because plaintiff's medication had "expired." Mark, however, gave plaintiff Tylenol for pain. (*Id.* at ¶ 30) Here, plaintiff's medical needs claim against Mark is frivolous. Mark provided plaintiff treatment and medication, and provided alternate pain medication when plaintiff's prescription had expired.

In addition, plaintiff's constitutional rights were not violated when he was charged for pain medication. A prison may charge a modest fee for certain types of medical care, so long as the inmate is not denied access to essential or needed medical treatment for failure to sign the cash slip. *See McCabe v. Pennsylvania Dep't of Corr.*, 2013 WL 1834309, at *2 (3d Cir. May 2, 2013). Plaintiff was not denied treatment by Mark, and the fee for pain medication does not rise to the level of a constitutional violation. Accordingly, the court will dismiss all claims against Mark (*i.e.*, ¶¶ 18, 30) as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

Plaintiff was taken to medical on June 7, 2011 and seen by defendant Nurse Carol Bianchi ("Bianchi"). Bianchi told plaintiff that she would refer him to a physician and would let him know when he was scheduled. Plaintiff alleges that Bianchi did not follow through. (D.I. 3, ¶¶ 20, 21) Plaintiff was taken to medical on June 13, 2011 by Henry and non-defendant correctional officers. Plaintiff alleges that Henry and a non-defendant correctional officer interfered with his medical visit. In addition, Henry told the nurse to charge plaintiff for the visit, plaintiff refused to sign the fee paper, and Henry signed it for plaintiff. (D.I. 3, ¶¶ 7, 22) Plaintiff further alleges that he was taken to medical on July 27, 2011 and again seen by Bianchi and another nurse. Plaintiff

7

alleges that the nurses allowed Henry and a non-defendant correctional officer to interfere with his medical visit. (D.I. 3, ¶ 24) Here, plaintiff's medical needs claim against Bianchi is frivolous. Bianchi provided plaintiff treatment and medication, and he was seen by medical personnel on numerous occasions. In addition, the allegations that Henry interfered with plaintiff's treatment does not rise to the level of an Eighth Amendment violation. Therefore, the court will dismiss as frivolous the claims against Bianchi and Henry found in paragraphs 7, 20, 21, 22, and 24 pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1). Bianchi will be dismissed as a defendant.

On June 14, 2011, plaintiff was told by defendant Nurse Ebuelle ("Ebuelle") that nothing else could done for his injuries and to stop putting in sick call slips for them. (D.I. 3, ¶ 8, 23 ) Plaintiff does not allege that he was denied treatment by Ebuelle. Instead he complains that there is no treatment available for his injuries. Plaintiff is clearly dissatisfied with Ebuelle's statement. Regardless, disagreement with treatment does not rise to the level of a constitutional violation. The claim is frivolous and Ebuelle will be dismissed as a defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

On August 11, 2011, plaintiff was taken by non-defendant correctional officers to a therapy session. Plaintiff was mistakenly taken the wrong time. Medical staff was told that plaintiff had refused the therapy session. (D.I. 3, ¶ 25) Plaintiff was denied a medical run on January 6, 2012, because he was in isolation. (D.I. 3, ¶ 41) The foregoing claims are not directed toward any defendant. Nor do they rise to the level of a constitutional violation. Therefore, the court will dismiss the claims in paragraphs 25 and 41 as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## 2. Accommodation

It appears that, because of medical conditions, plaintiff has sought the use of a handicapped shower, a special pillow, and lower bunk. He alleges the denial of the accommodations violates his constitutional rights.

On June 10, 2011, Beckles told a correctional officer to place plaintiff in a non-handicapped shower. Plaintiff alleges this was done on purpose. He asked to return to his cell or to use the end shower. Instead, he was left handcuffed for approximately one hour until all the inmates had showered. (D.I. 3, ¶ 6)

To the extent plaintiff attempts to raise a conditions of confinement claim, the claim fails. A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official, it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Here, plaintiff was not allowed to use the handicapped shower and remained handcuffed for one hour. The handcuffing and denial of the use of the handicapped shower by Beckles did not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g., Williams v. Delo*, 49 F.3d 442, 444–47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were

9

withheld). Therefore, the court will dismiss as frivolous the claims found in paragraph 6 pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

On October 1, 2011, plaintiff wrote letters to Dr. Derosiers and defendant Dr. Rogers ("Dr. Rogers") complaining that he had been denied the handicapped shower by Henry and that Henry threatened to take his pillow. Plaintiff asked the physicians to issue a memo for him to possess the pillow and to use the handicapped shower. Plaintiff received no response. On October 3, 2011, Henry took plaintiff's pillow. Plaintiff again wrote to Drs. Derosiers and Rogers with the same request for a memo to possess the pillow and to use the handicapped shower. Again, he received no response. (D.I. 3, ¶¶ 28, 29) Plaintiff fell in the shower on November 22, 2011, and blames Dr. Derosiers and Dr. Rogers for the fall because they refused to provide a memo for him to use the handicapped shower.[5] (Id. at ¶ 33) Plaintiff will be allowed to proceed against Dr. Derosiers and Dr. Rogers for their failure to even respond to plaintiff's requests for the alleged medically necessary accommodations.

After the fall, plaintiff was transferred to the infirmary. Plaintiff was lying on a mattress in a cell in the infirmary, and defendants C/O Edge and Younker lifted the mattress, with plaintiff on it, which caused his neck and back injuries to intensify. Plaintiff alleges that on November 29, 2011, defendant Nurse Gladys ("Gladys") lied to him about carrying out Dr. Rogers' orders with regard to a mattress on the floor and using a lift. Plaintiff alleges that, the next day, he was forced to lie in his urine for five hours because Gladys refused to empty his urine jug. (D.I. 3, ¶¶ 34, 35, 36) The

---

[5] Plaintiff was again denied use of the handicapped shower on December 23, 2011. (D.I. 3, ¶ 38)

allegations against Edge, Younker and Gladys do not meet either element required for an Eighth Amendment violation. They are frivolous and will be dismissed pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

On December 26, 2011, medical did not authorize plaintiff's housing on a lower bunk and, as a result, he slept on the floor.[6] (D.I. 3, ¶ 39) Plaintiff was moved to an upstairs cell on February 4, 2012, by defendant Lt. Gattis ("Gattis"), who knew that plaintiff required lower housing due to his neck and back injuries. Plaintiff showed Gattis a memo from Major Costello ("Costello") that indicated plaintiff needed the housing. Regardless, plaintiff was housed upstairs. (*Id.* at ¶ 14) The court will allow plaintiff to proceed with his Eighth Amendment claim against Gattis.

### C. Grievance

Plaintiff was taken to a grievance hearing on August 19, 2011. Plaintiff alleges that defendant Nurse Connie Dernberger ("Dernberger") provided false information to convince him that correctional officers can interfere with his medical needs. In addition, plaintiff alleges that on August 30, 2011, Dernberger, who is not a physician, wrote a false diagnosis statement about his injuries. (D.I. 3, ¶¶ 26, 27) In appears that plaintiff raises these claims in connection with the grievance process.

The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (unpublished). To the extent that plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing

---

[6]Plaintiff submitted a grievance on January 2, 2012, complaining that he was "housed on the floor." (D.I. 3, ¶ 40)

11

constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, or that the grievance process is inadequate. Therefore, the court will dismiss the claims against Dernberger as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Snitch

Henry has labeled plaintiff as a snitch to other inmates since 2008. He reiterated to other inmates on September 25 and 28, October 24, and November 14, 2011 that plaintiff was a snitch. (D.I. 3, ¶ 10, 11, 13)

This court has recognized the serious implications of being labeled a "snitch" in prison. *Blizzard v. Hastings*, 886 F. Supp. 405, 410 (D. Del. 1995) (being labeled a snitch "can put a prisoner at risk of being injured"). *See also Thomas v. District of Columbia,* 887 F.Supp. 1, 4 (D. D.C. 1995) (being "physically confronted by and threatened by inmates" after a guard started a rumor that prisoner was a snitch was "sufficiently harmful to make out an Eighth Amendment excessive force claim"). Plaintiff will be allowed to proceed with this claim.

### E. Personal Involvement/Respondeat Superior

Warden Perry Phelps ("Phelps") is named as a defendant. A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

A § 1983 claim cannot be premised upon a theory of respondeat superior. In order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (unpublished) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory

13

liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. See Sample v. Diecks, 885 F.2d at 1117-118; see also Iqbal, 566 U.S. at 677-686; City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, 128 F. App'x 240 (3d Cir. 2005) (unpublished).

Plaintiff provides no specific facts how Phelps violated his constitutional rights, that Phelps expressly directed the deprivation of plaintiff's constitutional rights, or that Phelps created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. The allegations against Phelps do not satisfy the Iqbal pleading requirements. For the above reasons, the court dismisses all claims against Phelps claims as frivolous pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and § 1915A(b)(1).

## IV. REQUEST FOR COUNSEL

Plaintiff's request for counsel will be denied without prejudice. (D.I. 5) A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel.[7] See Brightwell v. Lehman, 637 F.3d 187, 192 (3d Cir. 2011); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. Tabron, 6 F.3d at 155.

---

[7] See Mallard v. United States Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.".

14

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*Tabron*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

This case is in the early stages and service has not yet taken place. In addition, in reading plaintiff's complaint, it appears that he possesses the ability to adequately pursue his claims. Upon consideration of the record, the court is not persuaded that representation by an attorney is warranted at this time. The court can address the issue at a later date should counsel become necessary.

## V. CONCLUSION

For the above reasons, the court will deny without prejudice plaintiff's request for counsel. (D.I. 5) Further, the court concludes that plaintiff has alleged what appears to be cognizable and non-frivolous excessive force, failure to protect, medical, conditions of confinement, and/or snitch claims against Stanford Henry, Natasha Hollingsworth, Charles Stoddart, Wilfred Beckles, Angelina DeAllie, C/O Thomas, Lt. Drake, Lt Baines, C/O Lindale, Dr. Derosiers, Dr. Rogers, and Lt. Gattis. Plaintiff will be allowed to proceed against the foregoing defendants.

The court will dismiss the claims in paragraphs 6, 7, 8, 12, 18, 20, 21, 22, 23, 24, 25, 26, 27, 30, 34, 35, 36, 37, and 41 as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)

15

and § 1915A(b)(1) and will dismiss defendants Warden Phelps, Nurse Carol Bianchi, Nurse Mark, Nurse Connie Dernberger, Nurse Ebuele, C/O Edge, Nurse Gladys, and C/O Younker and the claims against as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

An appropriate order will be entered.